## HOWE *v.* STATE OF INDIANA.

[No. 23,162.   Filed February 21, 1917.]

1. CRIMINAL LAW.—*Evidence.*—*Acts and Declarations of Conspirators.*—*Admissibility.*—Before the acts or declarations of one conspirator are admissible in evidence against a coconspirator, there must be some evidence, either direct or circumstantial, of a conspiracy. p. 143.

2. CRIMINAL LAW.—*Evidence.*—*Conspiracy.*—*Threats of Conspirators.*—*Admissibility.*—In a prosecution for murder, evidence that two murdered men were friends, and that they, with others, went to defendant's place of business on the evening of the homicide, is insufficient to establish conspiracy, and threats alleged to have been made against defendant by one of the dead men are inadmissible in evidence on a trial for the murder of the other, since acts and declarations of conspirators are incompetent unless a *prima facie* case of conspiracy is shown. p. 143.

3. HOMICIDE.—*Evidence.*—*Plea of Self-Defense.*—*Threats of Conspirators.*—*Character of Decedent.*—*Admissibility.*—In a prosecution for murder, where the killing was justified on the ground of self-defense, but there was no evidence of an overt act on the part of the deceased or his companion, who was killed at the same time, to inflict injury upon either the defendant or his property, or any conduct from which any inference could reasonably be drawn that they intended the immediate perpetration of an act imminently dangerous to the life of the accused, evidence of threats against the defendant by one of the dead men and his general reputation for peace and quietude was inadmissible on the trial of the accused for the murder of the other victim of the homicide. p. 144.

From Clay Circuit Court; *John M. Rawley*, Judge.

Prosecution by the State of Indiana against James

Howe. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Charles D. Hunt, Gilbert W. Gambill* and *Lee F. Bays,* for appellant.

*Evan B. Stotsenburg,* Attorney-General, and *Wilbur T. Gruber,* for the State.

MYERS, J.—The grand jury of Sullivan county returned in the circuit court of that county two indictments against appellant, James Howe, one charging him with the murder of Charles Irwin, and the other with the murder of Arlie Duckworth.

The prosecuting attorney elected to try appellant first for the murder of Arlie Duckworth. On motion of appellant the venue was changed to the Clay Circuit Court, where a trial was had before a jury, resulting in finding appellant guilty as charged, and fixing his punishment at imprisonment for life. A motion for a new trial was overruled and judgment rendered on the verdict. Appellant has appealed to this court, assigning as error the overruling of his motion for a new trial. The State has not briefed this case on the merits, but takes the position that no question is presented for decision, for the reason that appellant's brief does not comply with the rules of this court. Appellant, to sustain his appeal, makes an attack only on the rulings of the trial court in excluding certain offered evidence.

Upon a careful reading of appellant's brief, we are of the opinion that any question as to the rulings of the trial court in two particulars is presented: (1) The exclusion of evidence of an alleged threat of Charles Irwin who, it is claimed, about a week or ten days before the homicide at his place of business at Shelburn said that "Corby Howe (this appellant) has been doing too much business at his saloon at Wilfred, and I and Arlie Duckworth are going over there to clean him out

and put a crimp in his business"; (2) in refusing to permit testimony relative to the general reputation of Charles Irwin for peace and quietude in the vicinity in which he lived prior to and on the day of the homicide.

It appears from the record in this case that Charles Irwin, on March 13, 1916, and for some time prior thereto, resided and was engaged in running a blind tiger in the town of Shelburn. Arlie Duckworth was a coal miner who also lived at Shelburn, a town located about three miles from the mining village of Wilfred. During the same time appellant was engaged in running a saloon at Wilfred. Irwin, Duckworth and two or three other persons hired an automobile which conveyed them from their home town to appellant's saloon, and where they arrived about nine o'clock in the evening of the day of the homicide. On entering the saloon they found appellant, with others, engaged in shooting craps on the floor of the saloon, and they immediately took part in the game. They borrowed some money from one of appellant's bartenders, who was told by Howe not to let them have any more money. Other persons were there who did not participate in the game. When Irwin and Duckworth quit the game, each was served with a drink of whisky over the bar at the south end by one of appellant's bartenders. They remained at the bar for a while talking between themselves, and at times with other persons. At the conclusion of the game, appellant went about the saloon looking after the business generally, and finally stopped behind the bar and at the north end. Shortly thereafter Irwin and Duckworth moved up to the north end of the bar, and in front of Howe, where a conversation took place among all of them. Just what that conversation was about, or what was said, none of the witnesses seem to know, except that Irwin used some opprobrious lan-

guage, whereupon appellant ordered both Irwin and Duckworth to leave the room. After ordering them out of the room two or three times, to which they made no reply, and on their failure to go, appellant picked up a thirty-eight caliber Colt's revolver, and, pointing it at Irwin, ordered him to get out. Irwin dropped down in front of the bar, and, either voluntarily or at the request of a bystander, immediately left the room. Duckworth remained, but did not say anything to appellant. Appellant then remarked that he was running that place, and told Duckworth to get out, or he would kill him. Duckworth then made the remark that he did not like to leave "under conditions like this." A bystander cautioned Howe about the use of the revolver, to which he replied, in effect, that he did not need any help in running that place. Irwin soon returned to the room, and sat down upon a box. After a minute or so, he went up to the bar, and in front of appellant hammered on the bar with his hand, and said: "You s— of a b— you are turkey to shoot." Appellant, still holding the revolver in his hand, reached under the bar with the other hand, and picked up a thirty-eight caliber Iver-Johnson gun, and, pointing one at Duckworth and the other at Irwin, told them to leave; to get out of the room. Neither of them did or said anything, but stood there looking at appellant. Appellant, after making this request some two or three times, fired one of the revolvers at Irwin, and killed him instantly. Immediately he turned the revolver on Duckworth, saying, "I guess I will kill you," and shot him through the head. After firing these two shots appellant turned around and picked up his coat and hat and said: "By G— he thought I wouldn't do it, but I done it. I am gone." Neither Irwin nor Duckworth were armed with any dangerous or deadly weapon, nor did they make any moves or motions indicating that they were, nor did

they or either of them attempt to strike or do the appellant any bodily injury or harm. Appellant was not a witness, and his defense was justifiable homicide.

In *Runyan* v. *State* (1877), 57 Ind. 80, 83, 26 Am. Rep. 52, this court quoted with approval Mr. Bishop, (1 Bishop, Criminal Law [5th ed.] §865), as follows: "If the person assaulted, being himself without fault, reasonably apprehends death or great bodily harm to himself, unless he kills the assailant, the killing is justifiable." See, also, *McDermott* v. *State* (1883), 89 Ind. 187, 195. In the case last cited it is said: "When a party in his defence purposely goes beyond what is reasonably necessary, and beyond what he believes to be necessary, he ceases to act in self-defence, and becomes an aggressor; and if, under such circumstances, he purposely takes the life of the assailant, he is guilty of murder."

Appellant was on trial for the murder of Arlie Duckworth. The excluded evidence was not of any threats alleged to have been made by Duckworth, nor was there any offer to prove his general reputation in the neighborhood in which he lived, for peace and quietude. It is not claimed that any of the supposed threats of Irwin were ever communicated to appellant, nor was the evidence sufficient to warrant the court in submitting to the jury the question of whether or not there was a conspiracy between Irwin and Duckworth to do appellant great bodily harm. Before the acts or declarations of one conspirator are admissible in evidence against a coconspirator, there must be some evidence, either direct or circumstantial, of a conspiracy. *Dye* v. *State* (1891), 130 Ind. 87, 29 N. E. 771; *Kahn* v. *State* (1914), 182 Ind. 1, 5, 105 N. E. 385. True, it appears that the two dead men were friends; that they, together, and with others, on the evening of the homicide, went to the place of

business of appellant, but there the evidence tending to show a conspicacy ends. Without proof to establish *prima facie* the fact of conspiracy between Irwin and Duckworth, the acts and declarations of Irwin were not admissible. *Card* v. *State* (1887), 109 Ind. 415, 9 N. E. 591; *Malone* v. *State* (1911), 176 Ind. 338, 96 N. E. 1.

But from the undisputed facts in this case, had the evidence been sufficient for the court to send the question of fact of a conspiracy to the jury, the proffered evidence would not have been admissible.

3.

The killing was admitted, but justified on the ground of self-defense. There was no evidence of an overt act on the part of either Irwin or Duckworth to do apellant bodily harm, or to injure his property. For, as said in *Garner* v. *State* (1891), 28 Fla. 113, 136, 9 South. 835, 841 (29 Am. St. 232) : "Where there is no evidence tending to show that the killing was in self-defense, or any conduct upon the part of the deceased from which, even assuming that he is a violent and dangerous man, any inference can reasonably be drawn that he intended the immediate perpetration of an act imminently dangerous to the life of the accused, or of serious bodily harm to him, the testimony is inadmissible."

If there was any doubt as to who was the aggressor, then such threats, whether communicated to the appellant or not, would be admissible for the purpose of tending to prove who started the combat. Wharton, in his work on Criminal Law (7th ed. §1027) states the rule which is approved in *Wiggins* v. *People* (1876), 93 U. S. 465, 467, 23 L. Ed. 941, as follows: " 'Where the question is as to what was deceased's attitude at the time of the fatal encounter, recent threats may become relevant to show that this attitude was one hostile to the defendant, even though such threats were not com-

municated to defendant.   The evidence is not relevant to show the *quo animo* of the defendant, but it may be relevant to show that, at the time of the meeting, the deceased was seeking defendant's life.' " See, also, *Allison* v. *United States* (1895), 160 U. S. 203, 16 Sup. Ct. 252, 40 L. Ed. 395; *State* v. *Jackman* (1907), 29 Nev. 403, 91 Pac. 143; *Stokes* v. *People* (1873), 53 N. Y. 164, 13 Am. Rep. 492; *State* v. *Barksdale* (1909), 122 La. 788, 48 South. 264; *State* v. *Burton* (1901), 63 Kan. 602, 66 Pac. 633; *People* v. *Lamar* (1906), 148 Cal. 564, 574, 83 Pac. 993; *Wilson* v. *State* (1892), 30 Fla. 234, 11 South. 556, 17 L. R. A. 654.

For the reasons stated, the rulings of the trial court were not erroneous.   Judgment affirmed.

NOTE.—Reported in 115 N. E. 81.   Conspiracy: (a) proof of, as prerequisite to admissibility of other evidence, 3 Am. St. 489, 12 Cyc 444; (b) admissibility of acts and declarations of co-conspirators in a prosecution for homicide in carrying out the unlawful purpose, 68 L. R. A. 220.   Evidence: (a) of threats of accused or of person killed or injured, 17 L. R. A. 654; (b) of threats by a third person, 10 Ann. Cas. 323, Ann. Cas. 1913 A 731; (c) of character and reputation of deceased as affecting homicide, 3 L. R. A. (N. S.) 351.