DAVID GUBITZ AND LARRY CHARLES MCCRANEY *v.* STATE OF INDIANA.

[No. 3-375A38. Filed March 1, 1977. Rehearing denied April 13, 1977. Transfer denied August 15, 1977.]

*Max Cohen,* of Gary, for appellant Gubitz, *David J. Hanson, Spangler, Jennings, Spangler & Dougherty,* of Gary, for appellant McCraney.

*Theodore L. Sendak,* Attorney General, *John R. O'Bryan,* Deputy Attorney General, for appellee.

HOFFMAN, J.—Defendants-appellants David Gubitz and Larry Charles McCraney were charged in a two-count affidavit with the offenses of conspiracy to commit a felony[1] and theft of property of $100 or more in value.[2] Trial by jury resulted in findings of guilty as charged. The trial court entered judgments on the verdicts and sentenced both Gubitz and McCraney to the custody of the Indiana Department of Correction for a period of not less than two nor more than fourteen years on the conspiracy count and for a period of not less than one nor more than ten years on the theft count, which sentences were to run concurrently. Thereafter, appellants' respective motions to correct errors were overruled and this appeal followed.

The evidence and favorable inferences therefrom disclose that between August 6, 1973 and August 17, 1973, Dwane Alexander and appellant Larry McCraney were engaged in a car theft operation in which they would steal automobiles, strip certain parts therefrom and subsequently sell the parts to auto wrecking companies.

On four or five separate occasions, McCraney and Alexander sold a total of fourteen to sixteen stolen automobile

---

1. IC 1971, 35-1-111-1 (Burns Code Ed.).
2. IC 1971, 35-17-5-3 (Burns Code Ed.). IC 1971, 35-17-5-12(3) (Burns Code Ed.).

doors at Universal Auto Parts in Hammond, Indiana. The procedure used upon arriving at Universal was that McCraney would enter the store and ask for Gubitz. The doors would then be taken to a garage across the street. Alexander testified that he saw Gubitz purchase doors on four occasions. Gubitz did not ask Alexander and McCraney where they were getting the doors, and on one occasion Gubitz chastised McCraney for bringing in doors with "numbers and service station stickers" on them.

On August 13th or 14th, Gubitz told McCraney that he wanted a "special set of doors" from a " '73 Ford Broughm (sic) but he didn't want no loud color."

The next day, McCraney and Alexander filled that order by stealing a brown 1973 Ford Brougham from the Woodmar Country Club in Hammond, Indiana. McCraney drove the automobile to a location in Gary, parked inside a garage, removed the doors from the automobile and took them to Universal Auto Wrecking Company where they were sold.

## I. CONTENTIONS IN COMMON

On appeal appellants raise several issues in common. Although their assertions at times explore varying aspects of the common question or extend the arguments to related areas, the common issues will be combined for purposes of discussion and the differing aspects and extensions of arguments will be drawn into the discussion of the common issue at the appropriate times.

The issues raised in common are that the trial court erred in admitting the testimony of alleged co-conspirator Alexander without any independent evidence of a conspiracy being first introduced and in admitting evidence of crimes other than that charged in the affidavit. Both also contend that the trial court erred in not granting their respective motions to correct errors when newly discovered evidence disclosed that Alex-

ander committed perjury when he testified he had not been granted leniency in exchange for his trial testimony.

Gubitz and McCraney first challenge the sufficiency of the evidence by asserting that the testimony of Dwane Alexander, an alleged co-conspirator, was not properly admissible because independent proof of a conspiracy was not first shown. The principles appellants urge us to apply were enunciated in *Patton, Nickelson* v. *State* (1961), 241 Ind. 645, at 648-49, 175 N.E.2d 11, at 12-13, as follows:

"Reference should here be made to the well established rule in this state that evidence of acts or statements of parties to a conspiracy in furtherance of its objects, is admissible against all the parties to the conspiracy though the statements were made or the acts were performed in the absence of the defendants. 5 I.L.E., Conspiracy, § 15, pp. 251, 252; *McKee* v. *The State* (1887), 111 Ind. 378, 12 N.E. 510.

"However, it is also true that before the acts or declarations of one conspirator are admissible into evidence against a coconspirator, there must be some evidence, either direct or circumstantial of the existence of a conspiracy. *Howe* v. *State* (1917), 186 Ind. 139, 143, 115 N.E. 81, 82; *Dye* v. *The State* (1891), 130 Ind. 87, 88, 29 N.E. 771, 772; *Kahn* v. *State* (1914), 182 Ind. 1, 4, 105 N.E. 385, 386.

"As this Court said in the case of *Dye* v. *State, supra,* (130 Ind. 87, 88, 29 N.E. 771, 772):

'. . . it is a rudimental principle that agency, conspiracy or the like, cannot be proved by the declarations of the alleged agent or conspirator. To make the admissions of an alleged conspirator evidence there must be some evidence, although it need not be strong, of the existence of the conspiracy. . . .'

"It is further well established that only those acts and declarations which transpired or were made between the beginning and the ending of the conspiracy and in furtherance of its objects may be shown against the asserted coconspirators who did not make the declarations or do the acts in question. 5 I.L.E., Conspiracy, § 15, pp. 251, 252, *supra.* In this connection it has been held that a confession or admission of the existence of a conspiracy by one coconspirator after he has been apprehended or arrested is not in furtherance of the conspiracy so as to be admissible against his fellow conspirators. *Fiswick* v. *United States*

(1946), 329 U.S. 211, 217, 67 S. Ct. 224, 227, 91 L.Ed. 196, 200; See: *Baker* v. *State* (1910), 174 Ind. 708, 713, 93 N.E. 14, 17; *Walls* v. *The State* (1890), 125 Ind. 400, 402, 25 N.E. 457."

Although the aforementioned principle is an accurate statement of the law, its application in the case at bar is misplaced. The principle, insofar as it relates to statements of a co-conspirator, refers to out-of-court statements or declarations. Thus, the principle requiring independent proof of a conspiracy to be first shown is applicable where such out-of-court statements of an alleged co-conspirator are offered into evidence against another conspirator as an exception to the hearsay rule. *See, Kessler* v. *State* (1976), 171 Ind. App. 181, 355 N.E. 2d 262; *Wolfe* v. *State* (1974), 161 Ind. App. 313, 315 N.E.2d 371. *See also, State* v. *Carey* (1974), 285 N.C. 497, 206 S.E. 2d 213; Annot., 46 A.L.R.3d 1148 (1972). However, the case at bar does not involve the use of such extrajudicial acts or declarations of one consiprator against another. Rather, it involves the use of *direct testimony* of one co-conspirator against another. The latter testimony is not hearsay.

A co-conspirator is an accomplice and is a competent witness. *Wolfe* v. *State, supra; State* v. *Carey, supra;* 15A C.J.S., *Conspiracy,* § 92 (C), 902. It is well-settled that a defendant may be convicted solely on the uncorroborated testimony of an accomplice. *Wolfe* v. *State, supra; Newman* v. *State* (1975), 263 Ind. 569, 334 N.E. 2d 684; *Keel* v. *State* (1975), 165 Ind. App. 579, 333 N.E.2d 328 (transfer denied). Accordingly, Alexander was a competent witness and his testimony was properly received into evidence.

McCraney asserts that in *Shelton* v. *State* (1972), 259 Ind. 559, 290 N.E.2d 47, our Supreme Court extended the rule requiring independent evidence of a conspiracy to instances where one co-conspirator gives direct testimony for the State against the other co-conspirator. However, an examination of the *Shelton* decision indicates that the court did not decide

whether the principle applied to instances where a co-conspirator gives direct testimony. Rather, the Supreme Court recognized the existence of the rule as enunciated in *Patton, Nickelson* v. *State, supra,* and decided it inapplicable on the basis that the State's witness was not, in fact, a co-conspirator.

Gubitz extends the sufficiency of the evidence issue to further contend that there was a failure of proof on the theft charge. However, an examination of the evidence indicates there was sufficient evidence for the jury to find that Gubitz counseled and encouraged the commission of the theft.

Gubitz further contends that under *Keiton* v. *State* (1968), 250 Ind. 294, 235 N.E.2d 695, the State was required to introduce the stolen doors as proof of the corpus delicti or show good reason why such could not be done, and that the failure of the State to introduce such evidence required the trial court, on motion of the defendant, to strike from the record all evidence relating thereto.[3]

In *Pulliam* v. *State* (1976), 264 Ind. 381, 345 N.E.2d 229, 237, our Supreme Court overruled *Keiton* v. *State, supra,* to the extent that it held that the failure to introduce into evidence the physical object of a theft would subject testimony relating thereto to a motion to strike. *See also, Riley* v. *State* (1976), 265 Ind. 43, 349 N.E.2d 704.

Both Gubitz and McCraney next contend that the trial court erred in admitting evidence of other crimes. One basis for this assertion is that the alleged co-conspirator Alexander should not have been allowed to testify at all until independent evidence of a conspiracy had been shown. Thus, he should not have been permitted to testify as to other crimes which he and McCraney allegedly committed.[4] However, in view of our

---

3. Gubitz' brief does not disclose nor have we been able to find in the record Gubitz' motion to strike. It appears that McCraney did make a motion to strike such evidence. *Shropshire* v. *State* (1972), 258 Ind. 70, 279 N.E.2d 219, held *Keiton* inapplicable where defendant failed to make a motion to strike.

4. Gubitz asserts that evidence of other criminal acts is inadmissible because the offense for which Gubitz was on trial had not been first established since Alexander's testimony was improperly admitted. Mc-

resolution of the issue concerning the propriety of the alleged co-conspirator's testimony, this contention need not be further treated.

Both Gubitz and McCraney rely on *Brooks* v. *State* (1973), 156 Ind. App. 414, 296 N.E.2d 894, for the proposition that it is reversible error to admit evidence of other thefts allegedly committed by a defendant. However, the proximity in time and place of the other criminal activity as well as the approach used by the defendants, makes the case at bar distinguishable from *Brooks,* and renders the evidence sufficient to show a common scheme, plan or design.

McCraney asserts in his reply brief that as to the theft count, the testimony of other crimes was clearly inadmissible because a "common scheme or plan" is not an element of the substantive crime of theft.

In *Watts* v. *State* (1950), 229 Ind. 80, at 103-104, 95 N.E.2d 570, at 579-80, our Supreme Court set forth the rule as follows:

> " 'Appellants also object to the introduction of certain evidence relating the commission of other and separate crimes from the one charged in the indictment. * * * It has been uniformly held that when the act constituting the crime has been established, then any evidence tending to show motive, intent, or guilty knowledge, if in issue, or any evidence which directly or, as a natural sequence, tends to show the defendant guilty of the crimes charged, is competent although it tends to show him guilty of another and distinct offense. It is the probative value of such evidence to prove the crime charged that makes the evidence admissible and not the fact that it proves or tends to prove the defendant guilty of other crimes. *Underhill* v. *State* (1916), 185 Ind. 587, 114 N.E. 88; *Gears* v. *State* (1932), 203 Ind. 380, 180 N.E. 585; *Zimmerman* v. *State* (1921), 190 Ind. 537, 130 N.E. 235.

Craney admits that the testimony concerning other crimes was admissible for the purpose of showing a common scheme or plan as to the conspiracy count, since a common scheme or plan is an element of conspiracy. However, McCraney contends that since Alexander should not have been permitted to testify in the first instance, he should not have been allowed to testify to other crimes which he and McCraney allegedly committed.

" 'Where the circumstances surrounding the offenses other than that charged are of a similar nature, showing use of similar or peculiar instrumentalities in the commission of each offense, or employment of a uniform scheme or method, evidence of such offenses is both relevant and material and is admissible as having probative force to prove the defendant guilty of the particular crime charged. *Peats* v. *State* (1938), 213 Ind. 560, 12 N.E.2d 270; *Gears* v. *State, supra; Dotterer* v. *State* (1909), 172 Ind. 357, 88 N.E. 689.' " (Quoting from *Smith* v. *State* (1939), 215 Ind. 629, at 634-35, 21 N.E.2d 709, at 711-12.) *See also, Vandeveer* v. *State* (1971), 256 Ind. 509, 269 N.E.2d 865; *Kindred* v. *State* (1970), 254 Ind. 127, 258 N.E.2d 411; *Miller* v. *State* (1975), 167 Ind. App. 271, 338 N.E.2d 733; *Samuels* v. *State* (1974), 159 Ind. App. 657, 308 N.E.2d 879.

As stated in *Watts,* it is not the fact that the evidence tends to prove a substantive element of the crime charged which makes evidence of a common scheme admissible; rather it is the probative force that the employment of a uniform scheme or method has in tending to prove the defendant guilty of the crime charged which makes the evidence admissible.

Gubitz finally contends that, in any event, such testimony was not admissible against him, and that the trial court erred in admitting such testimony without, *sua sponte,* giving a cautionary instruction to the jury. However, the failure to so instruct is not reversible error absent a request by defendant for such instruction. *Thompson* v. *State* (1920), 189 Ind. 182, 125 N.E. 641. *See,* 1 Underhill's Criminal Evidence, § 213, 651 (6th Ed. Herrick 1973).

Both Gubitz and McCraney contend that the trial court erred in not granting them a new trial when newly discovered evidence disclosed that Alexander committed perjury when he denied he had been promised leniency in exchange for his testimony.

At the hearing on the motion to correct errors, evidence was introduced tending to show a favorable disposition of charges pending against Alexander. On July 24, 1974, Alexander pleaded guilty to uttering a forged instrument and was

given probation. On July 26, 1974, an auto theft charge was dismissed by the State.

A material witness warrant was issued for Alexander, but it was unserved because Alexander could not be found.[5]

Alexander's attorney was subpoenaed, but he invoked the attorney-client privilege as to all questioning. Finally, the prosecutor's files were subpoenaed.

Appellants contend that the court erred in allowing Alexander's attorney to invoke the attorney-client privilege.

The questions asked, however, sought information which Alexander communicated to his attorney and not information discussed by Alexander and his attorney with a third party nor information between an attorney and a third party at the request of the client. *Cf.: Webster* v. *State* (1973), 261 Ind. 309, 302 N.E.2d 763. Furthermore, the privilege belongs to the client, and the client alone, to claim or to waive. Moreover, when the client is not present at the taking of the testimony, the privilege may be called to the court's attention by his attorney. McCormick et al. on Evidence, § 92, at 192-93 (2d Ed. 1972).

Gubitz also subpoenaed the prosecuting attorney's files. However the subpoena is not in the record. Accordingly, this court cannot consider matters relating to such subpoena. *Senst* v. *State* (1974), 162 Ind. App. 357, 319 N.E.2d 663 (transfer denied) ; *Glenn* v. *State* (1972), 154 Ind. App. 474, 290 N.E.2d 103 (transfer denied).

---

5. During the initial hearing on the motion to correct errors on November 29, 1974, the trial court suggested that appellants might more appropriately prove any pretrial promises of leniency by calling the prosecutor who was readily available rather than the witness Alexander who could not be located. In response to this suggestion, Gubitz' attorney asserted that they had the right to elect the manner in which they desired to proceed. He further advised the court that his strategy was to call Alexander to testify. If he did not claim the attorney-client privilege, then his attorney would be called upon to testify. If he did assert the privilege, appellants desired the trial court to draw an inference that the attorney's testimony would be unfavorable. Finally, if Alexander was still unavailable, they intended to call his attorney and ask the court to rule that Alexander had waived his attorney-client privilege.

Thus the only evidence adduced by appellants is the fact that after trial Alexander was treated favorably. However, the mere fact that the State's witness received a lenient sentence is not of itself sufficient to establish that Alexander perjured himself at trial. *Ingol* v. *State* (1973), 261 Ind. 329, 303 N.E. 2d 49; *Maynard* v. *State* (1973), 158 Ind. App. 260, 302 N.E. 2d 520 (transfer denied). Appellants thus failed to prove that "deals" had, in fact, been made in exchange for Alexander's testimony.

## II.   CONTENTIONS OF LARRY CHARLES McCRANEY

In addition to the above issues raised by appellants, each appellant asserts other errors affecting him alone. In this section the assertion of error made by appellant McCraney will be discussed. In Section III those raised by appellant Gubitz will be treated.

The errors asserted by appellant McCraney and to be treated in this section are that the trial court erred in denying his motion for discharge and in proceeding to trial when the identity of the informant was not disclosed until the first day of trial.

McCraney contends that the trial court erred in overruling his motion for discharge pursuant to Indiana Rules of Procedure, Criminal Rule 4(A). The record discloses that McCraney was charged on September 18, 1973, a warrant was issued and appellant was arrested on September 19, 1973. The trial court appointed pauper counsel for McCraney on September 25, 1973. On October 1, 1973, McCraney filed a "Petition for Reduction of Bond" which was subsequently denied.

The cause was set for trial on February 18, 1974. On January 4th, it was re-set for February 27, 1974, because the initial trial date was a legal holiday.

On January 23, 1974, John McKenna entered his appearance for McCraney and pauper counsel was permitted to withdraw.

On February 21, 1974, John McKenna moved to withdraw his appearance. However, this motion was denied on the ground that such withdrawal "at this time will result in a delay of trial setting for the defendant." The following day McKenna advised the court that his appearance was entered by mistake, and he was thereafter permitted to withdraw his appearance. The court again appointed pauper counsel to represent Mc-Craney.

The matter was subsequently continued to May 29, 1974. However, on April 4, 1974, McCraney requested, and was granted, permission to take depositions of the State's witnesses on April 24, 1974.

McCraney filed his motion for discharge on May 29, 1974, which was denied and the case was subsequently tried on June 3, 1974.

The aforementioned sequence of events disclose that the trial court did not err in denying McCraney's motion for discharge.

Although McCraney asserts that the mistaken appearance by counsel and his subsequent withdrawal was not chargeable to him, the record shows that he acquiesced in the appointment of counsel and subsequent continuances. Such delay was for McCraney's benefit and tended to insure his right to counsel. The delay was therefore chargeable to appellant. *Gross* v. *State* (1972), 258 Ind. 46, 278 N.E.2d 583.

Appellant further contends that the period of delay caused by the mistaken appearance of attorney McKenna, even if deducted from the period McCraney was held in custody, places the ultimate trial date beyond the six-month period. However, appellant's incarceration began prior to February 1, 1974. Therefore, the rule then in effect required the six-month period to run anew. *Hodge* v. *State* (1976), 264 Ind. 377, 344 N.E.2d 293; *State ex rel. Young* v. *Madison Circuit Court* (1974),

262 Ind. 130, 312 N.E.2d 74. The trial was within six months of this delay.

Finally it should be noted that appellant did not object to the setting of the trial date at any time before he filed his motion for discharge. Appellant was required to object at the earliest opportunity so as to allow the court time in which to correct the alleged error. The failure to so object constitutes a waiver of the right to discharge for such cause. *Bryant y. State* (1973), 261 Ind. 172, 301 N.E.2d 179.

McCraney next contends that the trial court erred in proceeding to trial when the name of the informer was not disclosed until the first day of trial. McCraney asserts that the State did not produce the informer on the date set for the taking of depositions of the State's witnesses and that when another witness was asked the name of the informant, he was instructed by the prosecuting attorney not to answer. However, McCraney did not thereafter seek an order from the court requiring disclosure of the identity of the informant.

Moreover, McCraney admits he was provided the opportunity to depose the informer before trial. McCraney admits the identity of the informer was disclosed the first day of trial, and the trial adjourned to allow the deposition of the informer to be taken. When trial resumed McCraney did not seek a further continuance to allow for further trial preparation. And, although McCraney contends generally that there was prejudice, he has not stated specifically what he could have obtained with a continuance. Moreover, the record indicates that McCraney used the deposition extensively to cross-examine Alexander. Appellant has therefore failed to demonstrate any error.

## III.  CONTENTIONS OF DAVID GUBITZ

The additional errors asserted by appellant Gubitz concern the sufficiency of the affidavit, a motion for discovery and competency of trial counsel.

Gubitz contends that the affidavit attempting to charge appellants with the crime of conspiracy to commit a felony was insufficient to state an offense. Gubitz asserts that the affidavit charges that he and McCraney conspired to commit the offense of theft. Gubitz' assertion of error is that the affidavit also describes the theft in the past tense.

An indictment or affidavit need only be so certain and particular as to enable the accused, the court and the jury to determine the crime for which conviction is sought. The defendant must be given sufficient information to enable him to prepare his defense and to assure that he will not twice be put in jeopardy for the same crime. *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686, *appeal dismissed,* 412 U.S. 925, 93 S.Ct. 2755, 37 L.Ed.2d 152.

The affidavit in the case at bar informs the appellant that he is charged with conspiring with McCraney *to commit* the crime of theft. It also describes the particular theft alleged to have been committed.

It should be noted that the affidavit did not charge the offense by stating that Gubitz and McCraney conspired to commit theft in that they *had obtained and exerted* unauthorized control over property of another. Rather the affidavit alleges that appellants conspired to commit theft and that they committed the theft which was the object of the conspiracy.

Moreover, Gubitz does not allege that he was misled by the wording used and nothing in the record indicates that he was misled. He has thus failed to demonstrate how the alleged imperfection prejudiced his substantial rights. *Thorne* v. *State* (1973), 260 Ind. 70, 292 N.E.2d 607; *Sizemore* v. *State* (1974), 159 Ind. App. 549, 308 N.E.2d 400 (transfer denied), *cert. denied,* 420 U.S. 909, 95 S.Ct. 827, 42 L.Ed.2d 838. Thus the trial court did not err in denying appellant's motion to dismiss.

Relying on *Steffler* v. *State* (1952), 230 Ind. 557, 568, 104 N.E.2d 729, Gubitz further asserts that the charge of conspiracy to commit theft and the charge of theft amounted to splitting a cause of action and should have been merged into one count. It should first be noted that *Steffler* v. *State, supra,* dealt with an instance in which the defendant was charged with conspiracy to commit larceny and conspiracy to commit the same larceny and escape by automobile, *i.e.,* automobile banditry. It is thus readily distinguishable from the case at bar. Moreover, the offense of conspiracy is complete when the illicit agreement is entered into. Conspiracy is thus separate and distinct from the various offenses which may be its object and therefore does not merge into the felony which is its object. 5 I.L.E., *Conspiracy,* § 11, 244. Even *Steffler* v. *State, supra,* recognized this distinction by stating that it was not faced with a situation wherein the accused was charged with the commission of a felony and conspiracy to commit the same felony. Thus the counts were not merged.

Gubitz next contends that the trial court erred in denying his motion for discovery. However appellant did not appear at the hearing on said motion at which time it was summarily denied. Discovery is not required under the Due Process Clause of the Constitution but may be regulated by the trial court. *Johnson* v. *State* (1971), 255 Ind. 589, 266 N.E.2d 57. It is a matter of discretion with the trial court. *Hudson* v. *State* (1976), 265 Ind. 302, 354 N.E.2d 164. A defendant may waive any pretrial discovery rights by failing to exercise or pursue them. Moreover, appellant has not alleged wherein he was harmed. The record indicates that appellant McCraney did engage in discovery which included the taking of depositions of the State's witnesses. There is no assertion that Gubitz did not receive the benefit of what that discovery produced. Without a showing of prejudice, we are not able to say that appellant did not, in fact, receive the information

sought through alternative means. Thus appellant has not demonstrated reversible error.

Gubitz finally contends that trial counsel was incompetent. There is a presumption that an attorney has discharged his duty fully, and it requires strong and convincing proof to overcome this presumption. *Lowe* v. *State* (1973), 260 Ind. 610, 298 N.E.2d 421; *Blackburn* v. *State, supra* (1973), 260 Ind. 5, 291 N.E.2d 686. The mere fact another attorney may have conducted the defense differently is not sufficient to require reversal. Isolated poor strategy, bad tactics, a mistake, carelessness, or inexperience does not necessarily amount to ineffective assistance of counsel unless the attorney's actions made the proceedings a mockery and shocking to the conscience of the court. *Blackburn* v. *State, supra.*

A reviewing court should not second guess matters of judgment or trial strategy. A poor result alone does not amount to denial of adequate assistance of counsel. *Lowe* v. *State, supra; Blackburn* v. *State, supra.* Applying the foregoing principles, a careful examination of the record indicates that counsel was not incompetent.

No reversible error having been shown, the judgments of conviction of appellants are affirmed.

Affirmed.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 360 N.E.2d 259.