Loretta STONEBRAKER, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 985S389.

Supreme Court of Indiana.

March 19, 1987.
Rehearing Denied May 28, 1987.

56

---

Stephen L. Trueblood, Trueblood Harmon Carter & Cook, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Loretta Stonebraker was convicted at the conclusion of a jury trial in the Parke Circuit Court of inducing a murder and of conspiracy to commit murder, a class A felony. She was sentenced to sixty (60) years for the former, and fifty (50) years for the latter, to be served concurrently. On direct appeal, she raises the following issues for our consideration:

1. whether Appellant was subjected to double jeopardy;

2. whether Appellant was denied her constitutional right to confront witnesses; and

3. prosecutorial misconduct.

In the summer of 1983, Appellant approached Helen Williams and John Sigler, and offered cash if they would kill her

husband. Appellant sought to get out of debt, and no longer loved her husband. She approached Williams and Sigler a number of times with increasing cash offers. Appellant first suggested that Williams and Sigler use an ice pick to kill the victim, and showed them how to do it. Subsequently, the three decided to lure the victim to a hog farm on the pretext of stealing a hog, and to kill him there. On February 24, 1984, Williams, Sigler, and the victim drove to the hog farm. Sigler and the victim left the truck, and Williams drove around for approximately fifteen (15) minutes. When she returned to the farm, Sigler was alone and told her it was all "over with." Williams testified that she later turned herself in because she "couldn't live with it anymore" and because it was causing her to drink.

## I

Appellant urges the trial court erred in entering judgment and sentencing her for both the offense of conspiracy and the offense of inducing a murder. Appellant was charged in two different causes which were consolidated for purposes of trial. In Cause No. 84–CR–68, Appellant was charged with conspiracy in violation of Ind. Code § 35–41–5–2. This statute makes it a crime to agree with another person to commit a felony, and provides that to conspire to commit murder is a class A felony. The statute further provides that the State must allege and prove that either the defendant, or the person with whom the defendant agreed, performed an overt act in furtherance of the agreement. The charging information here, omitting formal parts, read:

"On or about the 4th day of February, 1984, in Parke County, State of Indiana, Loretta N. Stonebraker, John C. Sigler, and Helen Lee Williams did agree within and among each other for the object and purpose with the intention to commit a felony, to-wit: murder. Said Loretta N. Stonebraker offering Helen Lee Williams and John C. Sigler the sum of Three Thousand Dollars ($3,000.00) to induce them to kill Marion L. Stonebraker, Sr."

Appellant was charged in Cause No. 84–CR–69 with inducing a murder in violation of Ind.Code § 35–41–2–4. This statute, in pertinent part, states: "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense...." The information charging Appellant with this violation read as follows:

"On or about the 4th day of February, 1984, in Parke County, State of Indiana, Loretta N. Stonebraker did knowingly induce John C. Sigler to commit an offense, to-wit: murder, by shooting Marion L. Stonebraker, Sr. in the head with a certain deadly weapon to-wit: a rifle loaded with gun powder and a bullet, thereby inflicting a mortal wound upon said Marion L. Stonebraker, Sr., causing him to die and said John C. Sigler did commit the offense in the manner and form stated."

The verdicts of the jury found Appellant "guilty of conspiracy to commit murder, a class A felony" and "guilty of aiding or inducing or causing an offense namely murder, a class A felony," and the trial court entered judgment on the verdicts. The trial court subsequently sentenced Appellant to fifty (50) years for the crime of "conspiracy, a class A felony" and sixty (60) years for "inducing an offense of murder," said sentences to run concurrently.

Appellant's claims that both of these charges and convictions find her guilty of the same crime or, at any rate, that conspiracy is an included offense of the inducing charge. As demonstrated by the record set out above, Appellant was properly charged in Cause No. 84–CR–68, convicted and sentenced for the crime of conspiracy to commit murder. The information charging conspiracy stated that Appellant entered into an agreement with Williams and Sigler, and offered them $3,000 to induce them to kill the decedent. This was a proper charge of conspiracy. The inducement statute, Ind.Code § 35–41–2–4, does not name a separate crime of aiding, abetting, or inducing one to commit an offense. Rather, it provides a person doing so is guilty of the underlying offense. In *Hoskins v. State* (1982), Ind., 441 N.E.2d 419,

Hoskins claimed he could not be found guilty of murder since the evidence showed he took part in a robbery but did not do the actual killing. We stated in that case:

"The evidence which tended to show that the Appellant himself did not actually commit the murders was introduced by Appellant in an effort to show that he was present and took part in the robbery but did not take part in any killings. The instructions on confederate liability were properly given by the trial court. They do not represent an additional charge nor a new theory in the cause. The trial court properly stated that there is no separate crime of being an accessory to a crime or aiding and abetting its perpetration. One can be charged as a principal and convicted on proof that he aided or abetted another in committing the crime. Instruction No. 3 was a recitation of the statute which states this to be so. Ind. Code § 35–41–2–4 (Burns Repl.1979)."

*Id.*, 441 N.E.2d at 425.

The charging affidavit for inducement contains the necessary information to comply with the aiding, inducing, or causing statute (Ind.Code § 35–41–2–4), and states this was contrary to Ind.Code § 35–42–1–1(1), the murder statute. This Court has frequently upheld convictions where the charging affidavit used language similar to that here. *Abner v. State* (1985), Ind., 479 N.E.2d 1254 (convicted of aiding reckless homicide); *Champion v. State* (1985), Ind., 478 N.E.2d 681 (pleaded guilty to aiding in the commission of a felony, robbery); *Mauricio v. State* (1985), Ind., 476 N.E.2d 88 (convicted of aiding felony murder); *Shaffer v. State* (1983), Ind., 449 N.E.2d 1074 (while reversed on other grounds, conviction was for inducing murder). All of these cases cite Ind.Code § 35–41–2–4 as the foundation for the conviction. In *Mauricio, supra,* we said:

"The purpose of an affidavit is to advise the defendant of the particular crime charged so he can prepare a defense. *Keel v. State* (1975), 165 Ind.App. 579, 333 N.E.2d 328. A defect in an affidavit is grounds for reversal only where it prejudices substantial rights of the defendant. *Thorne v. State* (1973), 260

Ind. 70, 292 N.E.2d 607; *Gabitz v. State* (1977), 172 Ind.App. 343, 354, 360 N.E.2d 259, 267."

*Id.* 476 N.E.2d at 91.

It is apparent Appellant was aware she was charged with murder. She attempted to prevent the filing of a death penalty affidavit indicating she was aware she was charged with murder. Appellant's defense would have been no different if the charging affidavit had contained language charging her with murder itself. The essential elements and facts necessitating her repudiation of the charge would have remained the same.

◾ We further reject the contention that conspiracy is an included offense of the inducing charge. The inducement charge under Ind.Code § 35–41–2–4 requires that the offense actually be committed, while conspiracy requires only that an overt act in furtherance of the conspiracy be committed. The conspiracy could be completed without the occurrence of a murder and the facts constituting the conspiracy would not support a charge of murder. There is therefore no merit to Appellant's contention that she was subjected to double jeopardy.

## II

Appellant next alleges she was denied her rights of due process and confrontation due to the trial court's limitation of cross-examination of key witnesses Helen Williams, Jan Bush, and Rhea Billingsly. Helen Williams was a co-conspirator who testified for the State, while the others were merely corroborating State's witnesses. Appellant sought to introduce evidence of drug usage, sales, and treatment on the part of all three witnesses. The trial court ruled that as to Williams, any evidence concerning drugs had to be confined to the time period of her alleged conspiratorial conversations with Appellant.

◾ The conduct of cross-examination is within the discretion of the trial court, and only a total denial will result in an error of constitutional proportion. *Komyatti v. State* (1986), Ind., 490 N.E.2d 279, 282, *reh.*

*denied* (1986). Anything less than a total denial is viewed as a regulation of the scope of ·cross-examination by the trial court, and will be reviewed for an abuse of discretion. *Id.* Appellant maintains this evidence was critical in that it showed Williams' bias and motive for testifying, and her inability to observe, perceive, recall, and relate events. The trial court did allow evidence to show Williams' bias and motive, in the form of testimony regarding her deal with the prosecutor. The trial court's limitation of cross-examination concerning drugs to the specific time period still allowed Appellant to show the witness' inability to perceive and recall events. The trial court's limitation simply confined certain testimony to pertinent times, and precluded any testimony concerning collateral and prejudicial matters.

In regard to witnesses Bush and Billingsly, Appellant sought to introduce evidence concerning their drug usage and sales, although no such usage or sales had ever been reduced to a conviction. Again, she argues such evidence was relevant to show bias and motive for testifying, and inability to perceive, relate, recall and observe events. The trial court limited such evidence to use at a particular time when the witnesses gave testimony, which use would affect their ability to think or act.

■ A search of the record, including the hearing on the admission of this evidence and Appellant's brief, reveals no showing of how this testimony would illustrate bias or motive for testimony. Furthermore, there is no showing that the evidence would reveal an inability to perceive, recall, relate, or observe events. Rather, this testimony appears to be an attempt to impeach the witnesses by reference to specific, prior, bad acts not reduced to convictions. It is a well-established rule that a witness cannot be impeached by specific acts of misconduct which have not resulted in criminal convictions. Impeachment must be done, if at all, by proving the witness' general reputation in the community for being dishonest. *McKim v. State* (1985), Ind., 476 N.E.2d 503, 506. The extent of drug use by Bush and Billingsly would be pertinent only as to their ability to recall events on the dates in question had they been using drugs at that time, or if they were on drugs at trial, or if drug abuse was so extensive as to impair their minds. *Id.* The trial court would have allowed any such evidence, its limitation going only to collateral drug use. The trial court's limitation of cross-examination was well within its discretion to conduct the scope of such testimony.

### III

Appellant maintains finally that the trial court erred in denying her motions for mistrial and in failing to declare a mistrial *sua sponte*, based on "multiple instances of prosecutorial misconduct." Appellant claims three (3) allegedly improper tactics were used by the prosecuting attorney: 1) impeachment by irrelevant, inadmissible, and prejudicial matters; 2) impeachment by use of a prior inconsistent statement not disclosed prior to trial despite discovery orders; and 3) interjection into evidence of a co-conspirator's extrajudicial statement previously held inadmissible.

■ In order to grant a mistrial based on prosecutorial misconduct, the trial court must find the defendant was placed in a position of grave peril to which he should not have been subjected, measured by the probable persuasive effect on the jury of the alleged misconduct. *Rhone v. State* (1986), Ind., 492 N.E.2d 1063, 1065–1066. Furthermore, the granting of a mistrial is within the discretion of the trial court, and will be reversed only for an abuse of discretion. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, 457, *reh. denied* (1986).

Here, Appellant first alleges misconduct due to impeachment by irrelevant, inadmissible, and prejudicial matters, and lists numerous instances, none of which rise to the level of grave peril. Furthermore, each instance cited by Appellant resulted in her objection, when made, being sustained. The trial court's sustaining the objections is deemed to have cured any prejudice. *See Roose v. State* (1983), Ind., 449 N.E.2d 594, 596. Where Appellant failed to object,

she waived any error. *Salahuddin v. State* (1986), Ind., 492 N.E.2d 292, 296.

Appellant next alleges misconduct due to impeachment "by the use of a prior inconsistent statement not disclosed prior to trial despite numerous discovery orders." She maintains the State acted in bad faith and placed her in grave peril.

A taped statement of Appellant was taken at a firehouse by a State Trooper. State's Witness, Officer John Britton, was present and took brief, cursory notes, the existence of which became evident to the State for the first time on cross-examination of Britton. It was discovered by Britton for the first time, at trial, that during Appellant's statement, the tape recorder malfunctioned and did not record a portion of the statement. Britton's notes contained comments on this portion of the statement, although he testified that his testimony concerning the unrecorded portion was based not on the notes, but on his ability to recall the statement. Britton testified, and the record supports the veracity of his testimony, that he had always been under the impression, when asked if he had any notes regarding a statement by Appellant, that the firehouse statement was excluded.

■ Questions of discovery are to be determined by the trial court in its discretion and, absent clear error and resulting prejudice, its ruling will not be overturned on appeal. *Wagner v. State* (1985), Ind., 474 N.E.2d 476, 485; *Murray v. State* (1982), Ind., 442 N.E.2d 1012, 1016. When the State fails to disclose all pertinent information prior to trial, the proper remedy is for the defendant to move for either a continuance or for exclusion of the evidence. *Id.*

■ In the present case, the absence of Britton's notes from discovery was reasonably explained. The prosecutor was not aware of the notes until Britton testified, and Britton himself was under the reasonable impression that notes from the firehouse statement were not included in the discovery order. Furthermore, Appellant has not shown that the appearance at trial of the notes placed her in grave peril. Britton was able to testify to their contents without referring to the notes, and since the notes were taken during Appellant's statement, it can hardly be argued she did not know what was said at the statement.

Finally, Appellant alleges misconduct due to interjection by the prosecutor into evidence of "the extrajudicial 'confession' of [Appellant's] co-conspirator, Johnny Sigler, which statement had previously been ruled inadmissible."

■ We first note that the prosecutor did not actually interject the statement into evidence. Rather, he made comments which suggested the existence of such a statement. Regardless, the trial court ordered the State "not to make any reference . . . during the trial . . . to any extra-judicial statement made by Defendant John Sigler, without first requesting a hearing outside the presence of the jury to determine the admissibility of such evidence." The State was further ordered to so instruct its witnesses. At various points during the testimony of State's witnesses, reference was made to something John Sigler had said. Generally, these references were made not in direct response to the State's question; thus, it is clear this is not a matter of misconduct on the part of the State. Furthermore, at times, Appellant failed to object and seek an admonishment until so late a time as the trial court felt such would only confuse the jury. Finally, where timely objections were made, the trial court properly sustained the objection and admonished the jury to disregard the testimony, thus curing any alleged prejudice. *Roose*, Ind., 449 N.E.2d at 596.

■ In his closing argument, the prosecutor stated:

"[Jerry Weir] told [Williams] how it had happened. People were talking. She said John Sigler was talking. When we asked in here what John Sigler said so forth and so on you heard the objections."

Appellant objected, and the trial court sustained the objection. Appellant contends this prejudicial comment requires a reversal. The prosecutor's comment did not re-

veal the contents of Sigler's statement. The comment merely suggested the existence of the statement. This is in no way meant to condone the remark. The prosecutor's remark was, quite simply, improper, and in the face of the numerous reminders not to refer to any statement of Sigler's, bordered on unethical conduct. Ind.Code of Prof.Resp. 1–102(A)(1) and 7–106(A) and (C). However, we do not find that the comment placed Appellant in grave peril or prejudiced her so as to require reversal. The trial court's sustaining the objection was the proper remedy. *Roose*, Ind., 449 N.E.2d at 596.

■ Much of Appellant's final argument relies on the proposition that, while perhaps these errors would not require reversal if standing alone, when considered together, their cumulative effect is so prejudicial as to warrant reversal. First, we have found many of the alleged errors not to be errors at all. Second, we have held that where irregularities standing alone do not amount to error, they cannot gain the stature of reversible error taken together. *Napier v. State* (1983), Ind., 445 N.E.2d 1361, 1364, *reh. denied* (1983).

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., dissents as to limits placed upon cross-examination and prosecutorial misconduct.