**Michael MAYNARD,
Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 55A01–8604–CR–101.**

Court of Appeals of Indiana,
First District.

June 17, 1987.

Rehearing Denied Aug. 6, 1987.

Susan K. Carpenter, Public Defender, Richard Ranucci, Sp. Asst. Public Defender, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Office of

Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

### STATEMENT OF THE CASE

Michael Maynard appeals his conviction for six (6) counts of theft. Remanded with instructions to correct the judgment as to Count Seven and affirmed in all other respects.

### FACTS

In October of 1984, William Duvall, Harry Stock, and Michael Maynard rented a home on Flanagan Lane in Martinsville, Indiana. The three built a garage on the premises. On October 31, 1984, the trio stole a 1980 red Chevrolet truck from a restaurant parking lot. Stock and Maynard followed as Duvall drove the truck to Flanagan Lane where the three men dismantled the truck in the garage. On November 5, 1984, Duvall and Anthony Maynard stole a black and gray truck with attached camper from the Market Square Arena parking lot. Duvall drove the truck to Flanagan Lane where he removed numerous items of personal property. Duvall, Stock, and Maynard then dismantled the truck. Again, on November 18, 1984, Duvall and Stock stole a 1980 blue Chevrolet truck from the State Office Building parking lot. Duvall drove the truck home where he, Stock, and Maynard disassembled it. On November 26, 1984, Duvall, Stock, and Maynard stole a 1979 brown and tan Chevrolet truck from Lafayette Square mall. Duvall drove the truck, followed by Stock and Maynard, to Flanagan Lane where the three altered the appearance of the truck in order to sell the vehicle. On November 27, 1984, Duvall and Stock stole a 1984 GMC truck from the parking lot of Wishard Memorial hospital. Duvall, Stock, and Maynard disassembled the vehicle. They sold the engine after removing its identification numbers.

In October of 1984, Indiana State Police Officer Rick Lang stopped James Johanningsmeir for speeding. Lang asked Johanningsmeir if he knew anything about a "chop shop" operation located near Flanagan Lane. However, Johanningsmeir was unfamiliar with the operation. Lang told Johanningsmeir that if he obtained information regarding the operation and passed it along to the police he might receive consideration on the ticket. Later, Johanningsmeir met Jay Holman in a tavern who asked Johanningsmeir if he wanted to purchase a GMC engine for $250. Holman invited Johanningsmeir to Flanagan Lane to look at the engine. Johanningsmeir telephoned Officer Lang, related his conversation with Holman, and agreed to assist the police in their investigation.

Accompanied by Holman, Johanningsmeir went to Flanagan Lane. Johanningsmeir informed Duvall that he wanted to purchase an engine. Duvall quoted him a price on the engine and Johanningsmeir told Duvall he would get back in touch with him. Thereafter, Johanningsmeir telephoned Officer Lang and related this conversation.

Later, Johanningsmeir returned to Flanagan Lane. He and Duvall went to the garage where Johanningsmeir observed an engine on a hoist and a 1984 cream colored GMC truck with an odometer that showed approximately 3,000 miles. The two men then went to a nearby shed on the property where Johanningsmeir saw several new truck seats and windshields. Johanningsmeir told Duvall he would reach a decision regarding the engine within several days and, thereafter, reported to Officer Lang.

Several days later, Johanningsmeir, accompanied by an undercover police officer, returned to Flanagan Lane and purchased the engine. Johanningsmeir then delivered the engine to the police. Upon examination, the police determined the engine's identification numbers had been destroyed. Consequently, a search warrant was obtained for Flanagan Lane.

On November 30, 1984, Officer Joseph Wainscott conducted surveillance of the Flanagan Lane compound. Officer Wainscott observed Maynard and two other men dismantling a brown and tan Chevrolet truck. When the trio observed police cars approaching they attempted to flee but

were later arrested. During the search that followed, the police seized property specified in the warrant as well as numerous vehicle parts not listed in the warrant. The police observed several dismantled and reconstructed vehicles including a brown and tan Chevrolet truck with no interior parts and altered vehicle identification numbers. In addition, the police observed a truck with attached camper with an altered vehicle identification number, repainted and containing a 1974 passenger car engine. The confiscated property was transported to a body shop in an attempt to determine ownership of the vehicles and parts.

On December 10, 1984, the State filed an information against Maynard charging one (1) count of removing a vehicle identification number, five (5) counts of theft and one (1) count of conspiracy to commit theft. On April 9, 1985, the trial court granted the State's motion for joinder of defendants Michael Maynard, Anthony Maynard, and Harry Stock. On July 15, 1985, following a jury trial, the jury returned a verdict of not guilty of knowingly altering or removing a vehicle identification number and guilty of theft on the remaining six counts. Prior to dismissal of the jury, Maynard requested the trial court to set aside the verdict on count seven, which was denied. On September 23, 1985, Maynard was sentenced to six (6) terms of three (3) years imprisonment to be served consecutively. Thereafter, Maynard perfected this appeal.

## ISSUES

1. Whether the trial court erred in refusing to correct or reverse an erroneous verdict on count seven prior to discharge of the jury, thereby necessitating reversal.

2. Whether the trial court erred in denying Maynard's motion to suppress which was based upon the assertion that an illegal search and seizure occurred.

3. Whether the trial court erred in admitting into evidence testimony of a co-conspirator when the existence of a conspiracy allegedly had not been established.

4. Whether the trial court erred by granting the State's motion for joinder of the defendants.

5. Whether the trial court erred by denying Maynard's motion in limine which sought to exclude the admission of evidence regarding uncharged criminal activity.

6. Whether the trial court erred in denying Maynard's motion for mistrial which was based on the assertion that a State's witness improperly referred to an inculpatory statement of a co-defendant.

7. Whether the evidence was sufficient to sustain Maynard's convictions for theft under counts 3, 4, and 5.

8. Whether the trial court erred in admitting into evidence State's exhibits 14, 15, and 17, photographs of vehicle parts, over Maynard's objections as to relevancy and foundation.

9. Whether the trial court erred in refusing to declare a mistrial based on the allegation that a State's witness attempted to refer to a statement made by Maynard.

10. Whether the trial court erred by failing to instruct the jury of the elements of the offenses charged against Maynard.

11. Whether the trial court erred by ordering that the defendants share time for *voir dire* examination and opening argument and share peremptory challenges.

## DISCUSSION AND DECISION

*Issue One*

Count Seven of the information filed against Maynard charged him with conspiracy to commit theft. However, during final instructions the trial court mistakenly stated that Count Seven invited conviction or acquittal for theft. During jury deliberations, Maynard objected to this instruction. The judge returned the jury to the courtroom and admonished them regarding the misinstruction on Count Seven. Despite this admonishment the jury returned a verdict on Count Seven finding Maynard guilty of theft. Thereafter, Maynard notified the trial judge of the incorrect verdict and filed a motion to set aside the verdict

on Count Seven. Following a hearing, the trial court denied Maynard's motion.

It is a denied of due process of law to convict an accused of a charge not made. *Hazlett v. State* (1951), 229 Ind. 577, 583, 99 N.E.2d 743, 745. Where instructions are given or a verdict is rendered on a particular offense which is not the same as the offense charged reversal usually is warranted. *See Sanford v. State* (1971), 255 Ind. 542, 265 N.E.2d 701. The rationale of this rule may be simply summarized as providing that:

> "(a) an affidavit must charge in direct and unmistakable terms the offense with which the defendant is accused; (b) if there is a reasonable doubt as to what offense(s) are set forth in the affidavit, that doubt should be resolved in favor of the defendant; and (c) where the defendant is convicted of an offense not within the charge, the conviction may not stand for the reason the defendant is entitled to limit his defense to those matters with which he stands accused."

*Belcher v. State* (1974), 162 Ind.App. 411, 413, 319 N.E.2d 658, 660. When a trial court receives a defective verdict form from a jury, the trial court should send the jury back for more deliberations to correct the defect. *Manns v. State* (1984), Ind. App., 459 N.E.2d 435, 436. Specifically, it is the duty of the trial judge to see that the verdict is in proper form and covers all the issues before discharging the jury. *Id.* "If the verdict is defective in substance it is a duty of the trial judge to have it amended by the jury before it is allowed to separate." *Id.*

In the present case, the verdict on Count Seven was defective in convicting Maynard of a crime for which he was not charged. Count Seven specifically charged Maynard with conspiracy to commit theft but the jury rendered a verdict of guilty of theft. Often, the remedy in this type of situation has been to reverse the conviction and remand the cause for a new trial. This action is required whenever it appears that the defendant has been misled by the evidence introduced at trial or the issues joined under the information have not been

determined. *E.g., Sanford; Bruce v. State* (1952), 230 Ind. 413, 104 N.E.2d 129.

However, an erroneous judgment of conviction of this type does not always require reversal. "Where the defendant has not been misled and it is evident that the issues joined under the charging information have been determined, a simple correction of the judgment, rather than reversal, is the appropriate remedy." *McFarland v. State* (1979), 179 Ind.App. 143, 150–151, 384 N.E.2d 1104, 1109–1110. In *McFarland,* the defendant was charged by information with the offenses of attempting to commit a felony (to-wit: robbery) while armed and assault with intent to kill. However, the verdict form indicated he was convicted of armed robbery and assault and battery. During jury instructions, the trial judge read the charging affidavit which alleged McFarland "did ... attempt to take the value of FIVE DOLLARS AND NO CENTS ($5.00) in lawful money." *Id.* at 151, 384 N.E.2d at 1110. The instruction setting out the elements if the crime followed the language of the statute and used the words, "committed or attempted to commit," interchangeably. However, the verdict form only referred to the consummated crime of armed robbery leaving the jury with no alternative, if it used the suggested verdict forms, but to find McFarland "guilty of COMMISSION OF A FELONY WHILE ARMED, TO WIT: ROBBERY, as charged in the formal accusation," or else return a verdict of acquittal. *Id.* On appeal, this court noted that the finding of guilty at the very least determined the issues joined under the charge of attempted robbery. In addition, this court stated that McFarland could not have been misled in his defense since the State had not introduced evidence of criminal activity unrelated to the offense charged. Accordingly, the second district concluded that the judgment on the erroneous verdict did not require reversal, but could simply be corrected to conform with the charge of attempted armed robbery. *Id.* at 152, 384 N.E.2d at 1110.

In the present case, Maynard's erroneous conviction for theft on Count Seven

does not require reversal. The charging information in Count Seven correctly set out the charge of conspiracy to commit theft. This information was read to the jury. The elements of conspiracy, as well as those of theft, were read to the jury during final instructions. Moreover, upon discovery that he had misinstructed the jury on Count Seven, the trial judge recalled the jury and admonished them:

> "Ladies and Gentlemen, the Court made one error ... in instructing you. That is to Count 7 on Mike Maynard. All places where the Court had told you the offense of Theft ... please show that to be Conspiracy to commit Theft ... or ... let's see ... how did they title that? Conspiracy to commit Theft. With that you will be excused back to the jury room ... and you may take the Instructions and the verdict forms."

Record at 3055–56. Maynard was tried for and defended against the conspiracy charge. In addition, Maynard was charged with, tried for, and defended against five counts of theft, making it difficult to perceive how he could have been misled in his defense by the erroneous verdict. Therefore, we find, as in *McFarland*, that the judgment on the erroneous verdict for Count Seven need not be reversed, but can simply be corrected, pursuant to Ind.Rules of Procedure, Appellate Rule 15(E) and (N)(6), to conform with the charge of conspiracy to commit theft.

*Issue Two*

Prior to trial, Maynard filed a motion to suppress evidence seized during the search of Flanagan Lane. During the search of the premises the police seized property specified in the warrant and also numerous vehicle parts which were not listed in the warrant. Maynard alleges the search warrant was defective because Johanningsmeir entered the Flanagan Lane premises and purchased an engine, while acting as an agent of the state, without a warrant thereby violating the Fourth Amendment and tainting any subsequent search. In addition, he argues the search and seizure exceeded the scope of the search warrant. Thus, Maynard argues the trial court erred in denying his motion to suppress evidence seized during the search of Flanagan Lane.

■ Johanningsmeir, acting as an agent of the State, first entered the Flanagan Lane compound at the invitation of Holman, an acquaintance of Duvall, Stock, and Maynard in order to purchase the engine. With the consent of Duvall, Johanningsmeir entered the residence and garage. At Duvall's invitation, Johanningsmeir returned to Flanagan Lane on several occasions, police monitoring the conversations between Maynard and Duvall via a concealed transmitter which Johanningsmeir wore. Johanningsmeir's general observations of the Flanagan Lane premises as well as his purchase of the stolen engine constituted the probable cause for the issuance of the search warrant.

■ An agent's misrepresentation of his identity does not render invalid the seller's consent to the entry. In *Lewis v. United States* (1966), 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312, undercover federal agents, passing as potential buyers of marijuana, were invited by the defendant to his home for the purpose of buying narcotics. At trial, the defendant sought to exclude the evidence on the basis that the agent, but disguising his identity and entering the defendant's home, had invaded the defendant's Fourth Amendment right to privacy. Rejecting this contention the Supreme Court stated:

> "Without question, the home is accorded the full range of Fourth Amendment protections. But when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street."

*Id.* at 211, 87 S.Ct. at 427, 17 L.Ed.2d at 316. In hopes of selling him a stolen engine, Duvall invited Johanningsmeir into the Flanagan Lane premises. Thus, he, Stock, and Maynard consented to the governmental intrusion. The mere fact that they were unaware of Johanningsmeir's true status as an agent does not, in itself, vitiate that consent. *Id.* at 207, 87 S.Ct. at

425, 17 L.Ed.2d at 314; *State ex rel. Medical Licensing Board v. Stetina* (1985), Ind. App., 477 N.E.2d 322, 329, *trans. denied; Stinchfield v. State* (1977), 174 Ind.App. 423, 431, 367 N.E.2d 1150, 1155.

On November 30, 1984, a search warrant, reflecting Johanningsmeir's observations, was obtained to search the Flanagan Lane compound. The warrant authorized police officers to seize the following items:

> "You are hereby authorized, directed and commanded in the name of the State of Indiana, to search for and seize the following property: parts of a 1984 GMC Suburban truck (VIN# 1G5EC1619EF52-1136); a 1980 Chevrolet 350 cu. inch engine; two (2) transfer cases or transmission cases; three (3) truck bench seats (brown, black and red color); a 1980 to 1984 Chevrolet truck (brown in color/two-tone, with two C.B. radio antennas attached to rearview mirror with a large tank underneath running parallel length of the vehicle on the left side); approximately four (4) Chevrolet truck windshields, located in and around a shed and a garage described below, all of which is evidence of the crime of Theft."

Record at 641. In executing the warrant the police obtained the items listed in the warrant. After Duvall advised the police that the remaining vehicle parts were stolen, the police confiscated these parts. Maynard argues the admission of the additional vehicle parts into evidence was improper since the seizure exceeded the scope of the warrant. The State asserts the additional parts fall under the plain view doctrine exception to the warrant requirement.

■ In determining whether an unreasonable search and seizure has occurred, we do not weigh the evidence. Rather, we examine the evidence most favorable to the ruling, together with any uncontradicted adverse evidence. *Holt v. State* (1985), Ind., 481 N.E.2d 1324, 1326; *Conn v. State* (1986), Ind.App., 496 N.E.2d 604, 607, *trans. denied.*

A search warrant must describe with particularity the items to be seized. U.S. Const. amend. IV; Ind. Const. art. 1, § 11.

General warrants, authorizing seizure of any and all items, are therefore proscribed by both the United States and Indiana Constitutions. *Layman v. State* (1980), Ind. App., 407 N.E.2d 259, 261–62, *trans. denied.*

Maynard argues that since the police suspected other vehicle parts might be on the premises the State cannot rely on the plain view doctrine, citing *Conn v. State* (1986), Ind.App., 496 N.E.2d 604, *trans. denied* and *Hewell v. State* (1984), Ind.App., 471 N.E.2d 1235, *trans. denied.* The plain view doctrine:

> "[A]llows the police to seize items without a warrant if three requirements are met. First, the police officer must lawfully be in a place or position from which he can view the property seized. (Citation omitted.) Second, the items must be discovered inadvertently during the course of a valid search. (Citation omitted.) Finally, it must be immediately apparent to the officer upon discovery that the item is evidence of a crime or contraband. (Citations omitted.)"

*Hewell,* at 1238. In *Conn,* this court found that the police conducted an impermissible general search where they seized 254 items, many in plain view, on the basis of a search warrant which specifically named nine items, particularly where the police had a notebook listing other items they expected to find but which were not listed in the warrant. Because the discovery of these other items was anticipated, this court found the plain view doctrine inapplicable. *Conn,* at 607. In *Hewell,* some silver which was not listed in a warrant and which was not readily apparent to be contraband was confiscated during the course of a search. Noting that the discovery of the silver was not inadvertent, we reversed and remanded stating, "When the police conduct a search authorized by a warrant which does not mention certain items the police expect to find during the search, reliance on plain view is pretense." *Hewell,* at 1239.

■ The present case is distinguishable from *Conn* and *Hewell.* In *Conn* the police confiscated property they knew to be

on the premises but which they failed to include in the warrant and in *Hewell* the police purposely confiscated silver without probable cause to suspect that it was stolen. Conversely, while the police, in the present case, suspected there might be other items on the Flanagan Lane premises they could not know the scope of the operation and its fruits; the officers were clearly not cognizant of the magnitude of the "chop shop" operation. Indeed, the police did not possess sufficient knowledge regarding the additional vehicles and parts to include them in the initial search warrant but were, instead, relying solely on Johanningsmeir's observations. Moreover, it was readily apparent, upon discovery of the additional items, that these items were fruits of the crime. Thus, the search met all of the requirements of the plain view doctrine, thereby excepting it from the strict rule regarding search warrants. The search of Flanagan Lane was lawful. The trial court did not err in admitting the seized items into evidence.

### Issue Three

Maynard argues the trial court erred in admitting the testimony of Duvall because independent proof of a conspiracy had not been shown prior to his testimony. Essentially, Maynard asks us to apply the standard set out in *Patton v. State* (1961), 241 Ind. 645, 175 N.E.2d 11:

"Reference should here be made to the well established rule in this state that evidence of acts or statements of parties to a conspiracy in furtherance of its objects, is admissible against all the parties to the conspiracy though the statements were made or the acts were performed in the absence of the defendants.

"However, it is also true that before the acts or declarations of one conspirator are admissible into evidence against a coconspirator, there must be some evidence, either direct or circumstantial of the existence of a conspiracy.

"As this Court said in the case of *Dye v. State, supra,* (130 Ind. 87, 88, 29 N.E. 771, 772):

'... it is a rudimental principle that agency, conspiracy or the like, cannot be proved by the declarations of the alleged agent or conspirator. To make the admissions of an alleged conspirator evidence, there must be some evidence, although it need not be strong, of the existence of the conspiracy.'"

*Patton,* at 648, 175 N.E.2d at 12.

■ However, while the foregoing principle is an accurate statement of the law its application to the present case is misplaced. The principle, insofar as it relates to statements of a co-conspirator, refers to out-of-court statements or declarations and serves merely as an exception to the "hearsay rule." *Gubitz v. State* (1977), 172 Ind.App. 343, 347, 360 N.E.2d 259, 262–63, *trans. denied.* The rule is not applicable when the testimony offered, as here, is the direct testimony of the co-conspirator. *Id. Wolfe v. State* (1974), 161 Ind.App. 313, 317, 315 N.E.2d 371, 374.

■ A co-conspirator is an accomplice and is a competent witness. *Weekly v. State* (1981), Ind.App., 415 N.E.2d 152, 156. In addition, a conviction may be based entirely upon the testimony of an accomplice. *Id.; Wolfe,* 161 Ind.App. at 317, 315 N.E.2d at 374. Therefore, the trial court did not err in admitting the direct testimony of Duvall.

### Issue Four

Maynard argues the trial court erred in granting the State's motion to join himself, Stock, and Anthony Maynard for trial pursuant to Indiana Code section 35–34–1–9(b)(2) (Burns 1985).[1] The State supported

---

1. "(b) Two [2] or more defendants can be joined in the same indictment or information when:

(1) Each defendant is charged with each offense included;

(2) Each of the defendants is charged as a conspirator or party to the commission of the offense and some of the defendants are also charged with one or more offenses alleged to be in furtherance of the conspiracy or common scheme or plan; however, a party to the commission of an offense or conspirator need not be designated as such in the indictment or information; or

(3) Conspiracy is not charged and not all of the defendants are charged in each count, if it is

this motion by alleging that each defendant had been charged as a conspirator or party to the commission of the offenses and that each defendant was charged with one or more offenses committed in furtherance of the conspiracy. Maynard argued, at the hearing on the motion that since he was not charged with conspiring with Anthony Maynard, the joinder with him was inappropriate. Additionally, he argues joinder with Stock resulted in prejudice due to evidence admitted concerning thefts committed solely by Stock.

■ The decision to grant or deny a motion for separate trial is within the sound discretion of the trial court. *Chandler v. State* (1981), 275 Ind. 624, 627, 419 N.E.2d 142, 149. A defendant must show on appeal that in light of what actually occurred at trial, the denial of a separate trial subjected him to such prejudice that the trial court may be said to have abused its discretion. *Chandler*, at 149.

■ Maynard was charged, in pertinent part, as follows:

"Rick Lang says: Mike Maynard on or about the 31st day of October, 1984, at and in the County of Morgan and State of Indiana, did agree with William F. Duvall and Harry Stock for the object and purpose and with the intent to commit a felony, to-wit: Theft, to-wit: exerting unauthorized control over the property of Helen Stone, To-wit: 1979 Chevrolet Suburban, VIN # CCL169F140806, the property of Michelle Stillinger to-wit: 1984 GMC Suburban truck, VIN # 165EC16L9EF521136, the property of Lee F. Shell III, to-wit: 1983 black and silver pickup truck, VIN # 1GCDC14D7DF320897, the property of Douglas E. Ancil, to-wit: 1980 blue Chevrolet pickup truck, VIN # CKL14AF351449, and the property of Louis Baldwin, to-wit: 1980 red Chevrolet pickup truck, VIN # CCG14AF332 and in furtherance of the agreement to said Mike Maynard did perform an overt

alleged in the indictment or information that the offenses charged:

(A) Were part of a common scheme or plan; or

act, to-wit: possessed and dismantled the above property without the consent of the owners."

Record at 107. Anthony Maynard was charged with conspiracy with William Duvall to steal a truck owned by Lee Shell. However, Michael Maynard was charged with actual theft of Shell's truck:

"Rick Lang says Mike Maynard on or about the 5th day of November, 1984, at and in the County of Morgan and State of Indaina [sic], did knowingly exert unauthorized control over property of Lee F. Shell III, to-wit: 1983 black and silver pickup truck, VIN 1GCDC14D7DF320897 by possessing without the soncent [sic] of Lee F. Shell III with intent to deprive Lee F. Shell III of its value or use."

Record at 106. Thus, while Maynard was not charged with conspiring with Anthony Maynard, he was charged with the theft of the truck which Anthony Maynard conspired to steal with Duvall. Furthermore, all of the defendants were engaged in a scheme of stealing vehicles, disassembling them, and selling the parts or reconstructed vehicles. These facts clearly bring Maynard and his co-defendants within the parameters of I.C. § 35–34–1–9 and, therefore, the trial court did not err in joining Maynard with Anthony Maynard.

However, Maynard further argues he was harmed due to the joinder of Stock. Stock was charged with the theft of Frank Iattarelli's truck. Both Iatterelli and a police officer were permitted to testify at trial over Maynard's objections that the testimony reflected adversely on him. Regardless, during the police officer's testimony the trial court admonished the jury:

"Ladies and Gentlemen, you shall disregard all the evidence ... testimony of this witness as it pertains to this present vehicle he is describing ... as it may pertain to Michael Maynard ... and I think that I have already admonished you as to Tony Maynard."

(B) Were so closely connected in respect to time, place, and occasion that it would be difficult to separate proof of one [1] charge from proof of the others."

Record at 2302. Several other witnesses testified as to two (2) infant car seats that were stolen from the truck of Michelle Stillinger. Maynard, involved in the theft of Stillinger's truck, objected on the grounds that this testimony implicated him. Consequently, the trial court ruled Stock's post-arrest statement inadmissible due to possible prejudice to Maynard. In addition, the police testimony regarding the car seats was stricken from the record.

 Maynard was not prejudiced by the evidence concerning Stock. With regard to a defendant's right to a fair trial during multiple defendant litigation this court has noted:

> "A defendant is not entitled to a separate trial as a matter of right merely because damaging evidence of the actions of a co-defendant reflects, by implication, on her, since there is no constitutional right to be protected from damaging evidence. The trial court does not abuse its discretion in refusing to order separate trials on the basis that a defendant may be found guilty by association where the evidence presents clearly defined and distinctive roles for each defendant and there is no confusion over who may have spoken certain words or may have done certain acts."

*Johnson v. State* (1981), Ind.App., 423 N.E.2d 623, 629, *trans. denied.* The evidence presented by the State, as well as the trial court's careful and sensitive handling of the evidence admitted, ensured the presentation to the jury of defined and distinctive roles for each defendant. *Dudley v. State* (1985), Ind., 480 N.E.2d 881, 892. Maynard has failed to show that the trial court abused its discretion by joining Stock and Anthony Maynard for trial. Under the circumstances noted, the trial court did not err in granting the State's motion for joinder.

### Issues Five and Six

Maynard argues the trial court erred in refusing to grant his motion in limine to prevent admittance of evidence regarding co-defendant Stock's actions and erred in refusing to grant a mistrial after reference to Stock's post-arrest statement concerning the same. Specifically, as noted in the previous issue, Stock was charged with theft of Frank Iatterelli's truck. At trial, over Maynard's objections that it reflected negatively on him, Iatterelli and Officer James Smith testified regarding the theft. The trial court then admonished the jury to disregard Smith's testimony as it pertained to Maynard (see *supra* Issue Four). Duvall then testified that after Michelle Stillinger's truck was stolen, Stock removed two infant car seats that were inside of the truck. Officer Fred Hayes testified that he questioned Stock, following his arrest, regarding possession of the seats. Officer Hayes further testified that Stock was concerned that his home might be searched for the seats. Maynard objected and moved for a mistrial on the grounds that this testimony implicated him since he was involved in the theft of the Stillinger truck. The trial court then ruled Stock's post-arrest statement inadmissible due to possible prejudice to Maynard. In addition, Officer Hayes testimony was later stricken from the record.

The decision to grant or deny a mistrial lies in the sound discretion of the trial court and will be reviewed only for an abuse of that discretion. *Brumfield v. State* (1982), Ind., 442 N.E.2d 973, 976. In order to demonstrate an abuse of that discretion, a defendant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Morgan v. State* (1981), 275 Ind. 666, 671, 419 N.E.2d 964, 967. Moreover, where a motion for mistrial is made but the trial court chooses to give an admonishment, the admonishment is presumed to cure any possible prejudice. *Hopkins v. State* (1981), Ind., 429 N.E.2d 631, 637.

 Maynard has failed to demonstrate that the trial court abused its discretion in refusing to grant his motion in limine and motion for a mistrial. As noted in Issue Four, the State presented evidence delineating defined and distinctive roles for each defendant. In addition, the trial judge suppressed possible prejudicial evidence and admonished the jury as to evidence inapplicable to Maynard. The trial court did not

err in denying Maynard's motion in limine or motion for mistrial.

*Issue Seven*

Maynard asserts there was insufficient evidence to support the theft verdicts on three counts. Specifically, Maynard argues that there is no evidence he knew the trucks were stolen or that he took control of them intending to deprive the owners of the use of their vehicles.

When reviewing the sufficiency of the evidence, this court does not judge the credibility of witnesses or weigh the evidence. Rather, we consider the evidence most favorable to the verdict together with all inferences which may be drawn therefrom. If there is substantial evidence of probative value to support each element of the offense, the judgment will be affirmed. *Johnson v. State* (1982), Ind.App., 441 N.E.2d 1015, 1016; *Anderson v. State* (1980), Ind.App., 406 N.E.2d 351, 352, *trans. denied; Stocklin v. State* (1976), 169 Ind.App. 49, 50, 345 N.E.2d 863, 864, *trans. denied.*

■■■ Theft is defined in Indiana Code section 35–43–4–2(a) (Burns 1985). The State is required to prove that a defendant (1) knowingly or intentionally (2) exerted unauthorized control (3) over the property of another person (4) with intent to deprive the other person of any part of its value or use. A theft conviction may be supported solely by circumstantial evidence. *Hughes v. State* (1983), Ind.App., 446 N.E.2d 1017, 1018.

■■■ In the present case there was sufficient evidence to support the elements of theft for counts 3, 4, and 5 against Maynard. Maynard argues there is no evidence of his knowledge that the trucks were stolen. The unexplained possession of stolen property shortly after the time of theft is a circumstance from which a jury is entitled to draw an inference of guilt. *Muse v. State* (1981), Ind., 419 N.E.2d 1302, 1304. In all three instances in question, Maynard assisted his co-defendants in dis-

mantling trucks within approximately twenty-four hours of their arrival at Flanagan Lane. Any person of ordinary common sense would realize that possible illegal activity is occurring when recently acquired vehicles are taken apart and rebuilt and repainted to look different. Moreover, it is ludicrous and borders on the absurd, to argue that dismantling a person's vehicle into various and sundry parts to be re-used or sold, all without the owner's permission, does not evidence exertion of control over the property of another with the intent to deprive them of the value of that property.[2] There is no merit to this contention. The evidence was sufficient to sustain Maynard's conviction for theft on these three counts.

*Issue Eight*

Maynard argues the trial court erred in admitting into evidence State's exhibits 14, 15, and 17, photographs of vehicle parts, due to lack of relevancy and failure to lay an adequate foundation. At trial, Doug Ancil identified State's exhibit 14 as a photograph of the bed of his 1980 Chevrolet truck which was stolen, and identified State's Exhibit 15 as the front "doghouse" of the truck. Michelle Stillinger identified Exhibit 17 as a photograph which depicted a GMC truck similar to one stolen from her in November of 1984. Officer Lang described Exhibit 17 as a photograph of a GMC truck that was seized from Flanagan Lane and identified Exhibit 14 as a truck bed seized from Flanagan Lane. Officer Lang stated Exhibit 15 portrayed a truck "doghouse" and other vehicle parts. Maynard objected to Exhibit 17 on the grounds of relevancy and lack of foundation. In addition, he objected to all three photographs as portraying additional vehicle parts not related to the instant case. Officer Lang identified the parts that were and were not seized from Flanagan Lane. Following argument, the photographs were admitted into evidence.

---

**2.** Indiana Code section 35–43–4–1(a) provides: "As used in this chapter, 'exert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property."

 The admission of photographic evidence is within the sound discretion of the trial court and will not be disturbed unless the court abuses its discretion. *Wade v. State* (1986), Ind., 490 N.E.2d 1097, 1103; *Brim v. State* (1984), Ind., 471 N.E.2d 672, 675. Admission of photographs must be preceded by the laying of an adequate foundation, which requires testimony that the pictures are a true and accurate representation of the things they are intended to portray. *Brim*, at 675. It is only necessary that a witness familiar with what is depicted establish these requirements. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, 295. In the present case, Ancil and Stillinger identified parts of their stolen trucks as portrayed in Exhibits 14, 15 and 17. Additionally, Officer Lang testified that the photographs were true and accurate representations of the vehicle parts he seized from Flanagan Lane and transported to the body shop. Officer Lang further testified that while he initialed each vehicle part that he seized, these markings were not apparent on the photographs. Officer Lang further testified the photographs were taken in the Spring of 1985 at the body shop where the vehicle parts were identified and stored. The State presented an adequate foundation for the admission of the exhibits. The trial court did not abuse its discretion in admitting the exhibits. In addition, the photographs pass the basic relevancy standard requiring that evidence tends to prove or disprove a material fact. *Id.* Relevance, as applied to photographic evidence, is determined by whether a witness would be permitted to describe what the photographs depict. *Id.* If so, the photograph is considered relevant. In the present case, the photographs were used to assist the victims and Officer Lang in giving their testimony. Moreover, the jury was informed that certain vehicle parts portrayed in the photographs were not seized from Flanagan Lane and were not related to the case. The trial court did not err in finding these photographs relevant and admitting them into evidence.

*Issue Nine*

Maynard argues the trial court erred in failing to declare a mistrial following testimony given by State's witness, Officer James Smith. Officer Smith testified regarding his involvement in the execution of the search warrant, including the arrest of Maynard, Duvall, and Stock. The following collaquy occurred:

"Q. And what ... if anything was said at that time?

"By Mr. Hennessy [counsel for Stock and Anthony Maynard]:

"Judge, I'm going to object at that time there is no proper foundation for that ... and I think at this time we need to remove the jury, I guess."

Record at 2202. After discussion, the State withdrew the question. Counsel for Stock then moved for a mistrial which was denied by the trial court. Maynard asserts, on appeal, that the trial court erred because Officer Smith's testimony "lent the jury a devastatingly prejudicial false inference that Maynard confessed." Appellant's Brief at 58.

 As noted earlier, a trial judge is vested with the discretion to grant or deny a motion for mistrial. *Brumfield*, at 976. In order to demonstrate an abuse of that discretion, a defendant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Morgan*, 275 Ind. at 671, 419 N.E.2d at 967. Moreover, where the jury is admonished by the trial court to disregard what has occurred at trial or if other reasonable curative measures are taken, no reversible error in failing to grant a mistrial will normally be found. *Tinnin v. State* (1981), 275 Ind. 203, 206, 416 N.E.2d 116, 118. Officer Smith did not answer the question posed by the State or utter anything that could be said to have placed Maynard in grave peril. Regardless, Maynard failed to object to the question posed to Officer Smith and failed to move for a mistrial. Maynard has, therefore, waived this issue. *Lambert v. State* (1983), Ind., 448 N.E.2d 288, 291.

*Issue Ten*

Maynard argues the trial court erred in failing to instruct the jury of the elements of the offenses charged against him. During preliminary instructions the court read the charges against Stock and then recited the elements of the offenses, alteration of a motor vehicle identification number, theft, and conspiracy, charged against him. The court then read the charge against Maynard and inquired as to whether or not the defendants would waive a second reading of the same offenses. Record at 1068–1069. Counsel for Maynard's co-defendant's responded affirmatively while Maynard's counsel said nothing. The court did not re-read the elements of the offenses. Again, during final instructions the court repeated the procedure with Stock. After reciting the charges against Maynard the court asked, "Would Mike Maynard waive the reading of the Statutes again?" to which Maynard's counsel answered, "Yes Judge." Record at 3026.

 The instruction of the jury is within the discretion of the trial court. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 581. Here, Maynard waived any possible error by failing to object to the trial court's actions and by expressly waiving a second reading of the elements of conspiracy and theft. *Bowens v. State* (1986), Ind., 496 N.E.2d 769, 770; *McMillian v. State* (1983), Ind., 450 N.E.2d 996, 998. Moreover, the trial court did inform the jury of the elements of the offenses. There is no fundamental error here; Maynard's rights were not violated by the trial court's failure to re-read the elements of theft and conspiracy.

*Issue Eleven*

Finally, Maynard argues the trial court erred in ordering that the defendants share peremptory challenges and time for *voir dire* and opening argument. The trial court, prior to jury selection, advised the defendants that they were entitled collectively to ten (10) peremptory challenges. The court allotted ninety (90) minutes per side for *voir dire* and limited opening argument to one (1) hour per side. Maynard asserts these limitations prejudiced his case.

 Indiana Code section 35–37–1–3 (Burns 1985) sets forth the number of peremptory challenges for a party and further provides that when several defendants are tried together, their challenges must be exercised jointly. Maynard cites no authority to support his contention that the trial court erred in granting the defendants ten peremptory challenges to be exercised jointly. On the contrary, the provisions of I.C. § 35–37–1–3 have been upheld by our supreme court and this court on numerous occasions. *Hunt v. State* (1983), Ind., 455 N.E.2d 307, 316; *Morris v. State* (1977), 266 Ind. 473, 477, 364 N.E.2d 132, 136, *cert. denied*, 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462; *see Killian v. State* (1984), Ind.App., 467 N.E.2d 1265, 1267–68 (It was not error to grant a total of ten peremptory challenges to be exercised jointly by three codefendants.) The trial court did not err in the present case.

 Maynard further asserts the trial court erroneously limited *voir dire* examination to ninety minutes per side. It consistently has been held that trial judges have broad discretion to regulate the form and substance of *voir dire* and that to establish error, it must be shown that an abuse of discretion rendered a fair trial impossible. *Gossmeyer v. State* (1985), Ind., 482 N.E.2d 239, 241; *Grimes v. State* (1983), Ind., 450 N.E.2d 512, 517. The trial court, in the present case, addressed initially all of the prospective jurors and questioned them. Additionally, prior to *voir dire*, the court gave each defense counsel the opportunity to submit written questions to supplement the oral *voir dire*. *See Marbley v. State* (1984), Ind., 461 N.E.2d 1102, 1106 (a court may limit the parties' oral *voir dire* and permit them to submit written questions to supplement the oral *voir dire*). Maynard has not demonstrated any abuse of discretion by which he was prejudiced but instead merely asks us to assume prejudice resulted from the trial court's actions.

Finally, Maynard argues that the trial court improperly limited opening argument to one hour per side. The scope and content of opening statements are within the sound discretion of the trial judge and will not be reversed unless a clear abuse of discretion is shown. *Vanyo v. State* (1983), Ind., 450 N.E.2d 524, 526. Maynard fails to demonstrate how he was harmed by this time limitation. There being no abuse of discretion, the trial court did not err in limiting opening argument.

Remanded to the trial court to correct the judgment to show Maynard convicted of conspiracy to commit theft as charged in Count Seven, affirmed in all other respects.

ROBERTSON and STATON, JJ., concur.