## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 16 2016, 9:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony Allen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 16, 2016

Court of Appeals Case No.
49A02-1511-CR-1853

Appeal from the Marion Superior Court

The Honorable Lisa Borges, Judge

Trial Court Cause No.
49G04-1407-F5-37207

**Bradford, Judge.**

# Case Summary

On July 24, 2014, an eyewitness called 911 to report what appeared to be a burglary in progress at MacAllister Machinery ("MacAllister's"), a Beech Grove business which sells lawn care equipment. Shortly thereafter, Beech Grove police arrested two men who had fled police in a truck carrying lawn care equipment stolen from MacAllister's. The police utilized K-9 partners to track and apprehend the suspects. Appellant-Defendant Anthony Allen was found choking one of the police dogs before being arrested. Allen was convicted of Level 5 felony burglary, Class A misdemeanor striking a law enforcement animal, and Class A misdemeanor resisting law enforcement. The jury instructions and verdict form each had a single scrivener's error which incorrectly listed Count II as "striking a law enforcement officer" instead of "striking a law enforcement animal." On appeal, Allen argues (1) that there was insufficient evidence to sustain his burglary conviction, and (2) that his due process rights were violated based on the defective verdict form. We affirm the trial court's judgment.

## Facts and Procedural History

On the night of July 24, 2014, Nikita Barbee was parked at a storage facility in Beech Grove. The storage facility is located adjacent to an abandoned house which in turn is located next to MacAllister's, a business which sells lawn care equipment. Barbee witnessed a two-door white pickup truck park in the field near the abandoned house from which two people exited and ran around the opposite side of the house. Barbee then heard loud noises and saw people

loading objects into the truck. Barbee called the police to report the suspicious activity and the truck left shortly thereafter.

[3] Beech Grove Police Officer Lee Huffman was dispatched in response to Barbee's call and spotted a white two-door pickup truck at a nearby intersection. Officer Huffman attempted to initiate a traffic stop but the truck did not stop and, instead, sped away and led Officer Huffman on a high speed chase. Ultimately, the truck crashed and the driver, Garland Jeffers, and passenger, Allen, exited the vehicle and fled on foot. When police searched the truck, they found boxes of lawn care equipment containing leaf blowers, chain saws, weed eaters, and hedge trimmers. The truck was registered to Kimberly Allen at a Fort Wayne address, and, inside the truck, there was mail addressed to Anthony Allen.

[4] Officer Huffman called for assistance from K-9 officers to track the two men. Officer Jeff Bruner and his K-9 partner located and apprehended Jeffers who was hiding beneath some brush in a nearby wooded area. Officer Andy Branham and his K-9 partner Kash located Allen hiding in some bushes. Officer Branham gave Allen several warnings to surrender and come out or Officer Branham would release Kash. Ultimately, Officer Branham sent Kash into the bushes to apprehend Allen. Moments later, Officer Branham heard Kash making gurgling sounds and, after shining his flashlight into the bushes, saw Allen grabbing Kash around the neck in an attempt to choke the dog.

[5] After inspecting the items found in the truck, Officer Tim Williams returned to MacAllister's where he found a pair of bolt cutters and a hole cut in the chain link fence on the east side of the property, which lies between MacAllister's and the abandoned house. Officer Williams entered the property through the hole, approached the nearest door, and, finding it unlocked, went inside. The door opened to the warehouse section of the business and Officer Williams noticed pallets and shelving nearby which contained items similar to those found in the truck including leaf blowers, chainsaws, and weed eaters.

[6] The following day, MacAllister's branch manager Michael Doyle performed an inventory, found that the business was missing several items, and identified the items recovered from the truck by their serial numbers as belonging to MacAllister's. On the afternoon before the burglary, Timothy Retherford, the service manager at MacAllister's, observed a man in the showroom who "looked a little off" because he remained in the store by himself for approximately an hour and a half and did not purchase anything. Tr. p. 256. Retherford's description of the man closely matched Allen's appearance. During the same time in which the man was in the store, MacAllister's surveillance video showed a white two-door pickup truck in the store's parking lot.

[7] The State charged Allen with Level 5 felony burglary, Class A misdemeanor striking a law enforcement animal, and Class A misdemeanor resisting law enforcement. Allen represented himself *pro se* at his jury trial which was held on September 28 and 29, 2015. With respect to Count II, striking a law

enforcement animal, the preliminary and final jury instructions contained a scrivener's error and stated, incorrectly, that Allen was charged with striking a law enforcement *officer*.  However, the jury instructions went on to provide the correct charging information and elements instruction for the offense of striking a law enforcement *animal*.

> Count 2, on or about July 24, 2014, Anthony Allen did knowingly strangle and/or mistreat a dog owned by a law enforcement agency, to wit: Indianapolis Metropolitan Police Department.
>
> * * *
>
> The crime of mistreating a law enforcement animal is defined by law as follows: A person who knowingly or intentionally strikes, torments, injures or otherwise mistreats a law enforcement animal, commits Mistreating a Law Enforcement Animal, a Class A misdemeanor.

Tr. pp. 555, 558.  The instruction accurately provides the elements required to prove the offense of striking a law enforcement animal as provided in Indiana Code section 35-46-3-11.  Allen did not object to the apparent scrivener's error.

[8]  The jury found Allen guilty as charged and, on October 21, 2015, the trial court sentenced Allen to five years for the burglary conviction, one year for striking a law enforcement animal, and one year for resisting law enforcement, all to be served concurrently.

# Discussion and Decision

Allen raises two issues for our review: (1) whether there is sufficient evidence to sustain his burglary conviction and (2) whether his due process rights were violated when he was charged with striking a law enforcement animal but convicted of striking a law enforcement officer.

# I. Sufficiency of Evidence

When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Mork v. State*, 912 N.E.2d 408, 411 (Ind. Ct. App. 2009) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). We do not reweigh the evidence or assess witness credibility. *Id*. We consider conflicting evidence most favorably to the trial court's ruling. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*.

*Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010).

The probative evidence supporting Allen's burglary conviction is as follows: an eyewitness saw a white two-door pickup truck pull up near the abandoned house on the lot adjacent to MacAllister's. Two men got out of the truck and at some point began loading large items into the truck. Later that night, Officer Williams inspected the MacAllister's property and found a pair of bolt cutters and a hole cut in the chain link fence which lies between MacAllister's and the abandoned house. After entering the MacAllister's property through the hole, Officer Williams found that the nearest door, which opened to the MacAllister's warehouse, was unlocked. MacAllister's service manager

Retherford testified that that door is "normally completely barred and never used." Tr. p. 259.

[12] The eyewitness reported that when the truck left, it drove onto Elmwood Avenue toward Emerson Avenue. Officer Huffman responded to the 911 call and located a white two-door pickup truck carrying two men near the intersection of Elmwood and Emerson. The truck led Officer Huffman on a high-speed chase before crashing. Allen concedes that he was a passenger in the truck, that there were goods stolen from MacAllister's in the truck, and that he was apprehended running from the truck. However, Allen contends that there was insufficient evidence that he was involved with the breaking and entering of MacAllister's or the removing of merchandise therefrom and, consequently, that his conviction should be reduced to theft. Specifically, Allen argues that no one could identify him or Jeffers as the men who approached or cut the chain link fence, entered MacAllister's, or carried boxes from the warehouse.

[13] Essentially, Allen argues that evidence against him is insufficient because it is entirely circumstantial. However, "[c]ircumstantial evidence and the inference which it supports may be sufficient to warrant a conviction for that offense." *Higgason v. State*, 523 N.E.2d 399, 402 (Ind. 1988). In *Higgason*, the Indiana Supreme Court addressed a similar situation where the defendant also challenged the sufficiency of the evidence supporting his burglary conviction. The Court reasoned as follows:

[A]ppellant's car was observed near the scene of the crime, a high speed chase ensued, the car was wrecked, appellant fled, was pursued by police, and arrested at his residence. The property stolen from [the victim's] garage and the prybar used to gain entry to the garage were found in appellant's car. This evidence is sufficient to support the conviction.

*Id*.

In addition to the similarly incriminating evidence here, a man matching Allen's description was seen acting suspiciously inside MacAllister's on the day of the burglary and a white two-door pickup truck was parked outside of the business around the same time. While the evidence of Allen's guilt is wholly circumstantial, it is also overwhelming and leaves no room for any reasonable theory of innocence, i.e. his unexplained possession of property which had been stolen just minutes prior. *See Allen v. State*, 743 N.E.2d 1222, 1230 (Ind. Ct. App. 2001) ("the unexplained possession of recently stolen property will support a burglary conviction so long as there is evidence that there was in fact a burglary committed"). Accordingly, there was sufficient evidence to support Allen's conviction for burglary.

## II. Defective Verdict

"It is a denial of due process of law to convict an accused of a charge not made. Where instructions are given or a verdict is rendered on a particular offense which is not the same as the offense charged reversal usually is warranted." *Maynard v. State*, 508 N.E.2d 1346, 1351 (Ind. Ct. App. 1987) (citations omitted). "However, an erroneous judgment of conviction of this type does not

always require reversal. 'Where the defendant has not been misled and it is evident that the issues joined under the charging information have been determined, a simple correction of the judgment, rather than reversal, is the appropriate remedy.'" *Id.* (quoting *McFarland v. State*, 179 Ind. App. 143, 150-151, 384 N.E.2d 1104, 1109-1110 (1979)). For the following reasons, we find that Allen has not shown that he was misled in any way by the error on the verdict form.

[16] The State alleged in Count II of the charging information (both original and amended) that "on or about July 24, 2014, Anthony Allen did knowingly strangle and/or mistreat a dog owned by a law enforcement agency, to wit: Indianapolis Metropolitan Police Department." Appellant's App. p. 31, 43. The preliminary and final jury instructions stated, incorrectly, that Allen was charged with "Count II Striking a Law Enforcement Officer." Appellant's App. p. 121. However, the jury instructions went on to provide the correct charging information and elements instruction for the offense of striking a law enforcement animal.

> Count 2, on or about July 24, 2014, Anthony Allen did knowingly strangle and/or mistreat a dog owned by a law enforcement agency, to wit: Indianapolis Metropolitan Police Department.
>
> * * *
>
> The crime of mistreating a law enforcement animal is defined by law as follows: A person who knowingly or intentionally strikes, torments, injures or otherwise mistreats a law enforcement animal, commits Mistreating a Law Enforcement Animal, a Class A misdemeanor. Before you may convict the Defendant,

the State must have proved each of the following beyond a reasonable doubt: (1) The Defendant (2) knowingly (3) mistreated a dog, which was a law enforcement animal.

Appellant's App. pp. 122, 126.

[17] During closing argument, the State made the following argument with regard to Count II: "You heard testimony from Officer Branham that when Kash went into the bushes he saw Anthony Allen strangling his dog. He heard gurgling and choking noises. That proves the other charge that Mr. Allen faces, striking a law enforcement animal or mistreating a law enforcement animal." Tr. p. 432. Following Officer Branham's testimony, the trial court asked Officer Branham "in your opinion, was the Defendant trying to hurt the dog or stop from being bit?" to which Officer Branham responded, "I would – in my opinion say hurt the dog." Tr. p. 251.

[18] The blank verdict form given to the jury for Count II read as follows:

Verdict

We the Jury, find the Defendant, Anthony Allen, **not guilty** of striking a law enforcement *animal*, a Class A misdemeanor as charged in Count II.

Dated:_____                    _____
                                                        Foreperson

Verdict

We the Jury, find the Defendant, Anthony Allen, **guilty** of striking a law enforcement *officer*, a Class A misdemeanor as charged in Count II.

Dated:_____        _____
Foreperson

Court's Ex. 5 (italicized emphases added). The jury returned a guilty verdict on Count II. The abstract of judgment and sentencing order correctly list the guilty verdict on Count II as striking a law enforcement animal.

[19] Allen had the opportunity to review all of the aforementioned forms and he raised no objections. While this would typically waive the issue for review on appeal, Allen argues that the discrepancy between the charge and conviction constitutes a violation of his due process rights and so cannot be waived.

> Failure to object to an instruction at trial typically results in waiver of the issue on appeal. *Clay v. State*, 766 N.E.2d 33, 36 (Ind. Ct. App. 2002). If an instruction is so flawed that it constitutes fundamental error, however, waiver does not preclude review on appeal. *Id*. To qualify as fundamental, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id*. Fundamental error is a substantial, blatant violation of due process.

*Hall v. State*, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010).

[20] Regardless of whether there has been a fundamental error here, reversal of an erroneous judgment is not appropriate where the defendant has not been misled and it is evident that the issues under the charging information have been determined. *Maynard*, 508 N.E.2d at 1351. Despite Allen's claim that he was misled by the error at issue, he has provided no explanation of how he was misled or evidence that he, or anyone else, was confused by the jury

instructions or verdict form. It is clear that the issue which was addressed and resolved at trial was whether Allen choked or otherwise attacked Officer Branham's K-9 partner Kash. The State never alleged that Allen attempted to or did strike or choke any of the police officers. Because the sentencing order and abstract of judgment correctly list the guilty verdict on Count II as striking a law enforcement animal, there is no reason to remand for a correction of judgment.

[21] The judgment of the trial court is affirmed.

Pyle, J., and Altice, J., concur.